[No. 24. Third Appellate District.—June 3, 1905.]

J. F. GIBSON, Appellant, v. T. B. TWADDLE et al., Respondents.

ELECTION—CANVASS BY SUPERVISORS—NATURE OF POWERS—REJECTION OF UNAUTHENTICATED RETURNS—CERTIFICATE.—The board of supervisors, in canvassing the returns of election, have no judicial powers, and cannot hear or determine evidence. They are not authorized to canvass any returns not duly authenticated, and have no duty to permit an authentication to be made of unauthenticated returns of a precinct, and may reject the same and issue a certificate of election based upon such rejection, which is *prima facie* evidence of a right to the office.

ID.—CESSATION OF FUNCTIONS—REMEDY BY CONTEST—MANDAMUS NOT PERMISSIBLE.—Where the supervisors have issued the certificate of election and adjourned as board of canvassers, their functions have ceased; and there being an adequate and exclusive remedy by contest of the election, *mandamus* will not lie after such adjournment to compel the board of supervisors to permit the election officers of the rejected precinct to authenticate the returns, and to count the rejected returns.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Charles G. Lamberson, and H. B. McClure, for Appellant.

Hannah & Miller, Bradley & Farnsworth, and Maurice E. Power, for Respondents.

McLAUGHLIN, J.—The appellant and one Crowley were candidates for assessor of Tulare County at the general election held in 1902. The respondents are members of the board of supervisors of Tulare County, and as such, on November 10, 1902, met for the purpose of canvassing the election returns, pursuant to section 1278 et seq. of the Political Code. At that time the *returns from all the precincts in the county had been received,* and the board proceeded to canvass the same. When Liberty Precinct was reached, it was found that the tally-sheet had not been signed or attested by any of the members of the election board, as required by section 1260 of

the Political Code.  The board of supervisors refused to can-
vass the returns or count the votes of that precinct, but
canvassed the returns from all other precincts in the county.
Finding, upon the completion of such canvass, that Crowley
had received a majority of all the votes cast, they declared
him elected, and directed that a certificate of election issue to
him.  Had the votes of Liberty Precinct been counted, appel-
lant would have had three majority on the face of the re-
turns.  On November 11th, while the board of supervisors was
still canvassing said returns, the election officers of Liberty
Precinct appeared before them and asked permission to sign
and attest the tally-sheet.  This was after the returns from
said precinct had been opened and passed.  The board of can-
vassers refused to allow the election officers to sign or attest
the tally-sheet, and proceeded with the canvass.  On Decem-
ber 3, 1902, *after the canvass of said returns had been fully
completed,* and after the result had been declared and the
certificate of election had issued to Crowley, this action was
brought.  The appellant, in his petition, recited the above and
other pertinent facts, and prayed that a writ of mandate
might issue to the respondents, as a board of supervisors, com-
manding them to permit the election officers of Liberty Pre-
cinct "to sign said tally-list, and thereupon to canvass and
count the returns of said election from said Liberty Precinct."
To this petition respondents demurred, upon the grounds
that no cause of action was stated and that petitioner had a
plain, speedy, and adequate remedy in the ordinary course
of the law.  The demurrer was sustained, and from the judg-
ment thereupon entered denying the writ this appeal was
taken.

The writ of mandate will issue to a board of supervisors to
compel the performance of an act which the law *specially
enjoins* as a *duty* resulting from their office.  And then only
where there is not a plain, speedy, and adequate remedy in
the ordinary course of the law.  (Code Civ. Proc., secs. 1085,
1086.)  The returns referred to in section 1268 of the Political
Code "are the sealed packages containing the register, lists,
papers, and ballots," prescribed by sections 1261 and 1263 of
the same code.  In canvassing such returns the board has no
aathority "to consider anything but the returns before it."
"It has no judicial powers.  The *duties of canvassers are*

*simply to add, and ascertain by calculation,* the number of votes given for any office. They were not authorized to decide, in any other mode than by an *examination of the returns made to them* according to law. They are not *required,* or *authorized* to *hear witnesses* or weigh evidence. They have no power to canvass, as election returns, any papers not duly *authenticated* in the *mode prescribed by law.* An attempted canvass, in which the result declared *was based on papers not thus authorized,* may be treated as a nullity by the party injured." (*People* v. *Stewart,* 132 Cal. 285, [64 Pac. 285].) If the powers of a board of supervisors are thus limited, it is indeed difficult to conceive how it can be their *duty* to allow persons who voluntarily appear before them to add to, or subtract from, the "returns made to them according to law." If they can only act on papers "duly authenticated as required by law," they are certainly under no obligation to permit a *post factum* authentication. If they can only "add and ascertain by calculation, the number of votes given for any office, by an examination of the *returns made to them,*" according to sections 1260 to 1264 inclusive of the Political Code, it is clear that they cannot be compelled by mandate to ascertain such facts in another way. (*Pacheco* v. *Beck,* 52 Cal. 7; *Carlson* v. *Burt,* 111 Cal. 131, [43 Pac. 583].) Therefore, the acts here sought to be compelled are not specially enjoined by law, nor are they duties resulting from the office of supervisor.

Turning to the other point, we are at a loss to see how a writ of mandate can be a panacea for appellant's legal ills, much less the only plain, speedy, and adequate remedy he can invoke. Boards of supervisors, in canvassing returns, must commence and conclude their labors, as required by sections 1278 to 1284 inclusive of the Political Code. When this has been done, their functions as a canvassing board cease, and we have found no law which even hints that they may reconvene for the purpose of recanvassing the returns, and annulling the certificate of election previously issued. We are positive that they cannot be compelled to do so by *mandamus,* and it is only in this way that appellant could be benefited by this proceeding. This special body, born of the law for a special purpose, had adjourned *sine die* before this action was commenced, and, unless it could be re-

vivified and *compelled to undo its work,* mandate would be futile. Appellant's adversary held a certificate which was *prima facie* evidence of his right to the office, and relief must be inadequate unless this certificate could be canceled. Crowley had been "declared elected," and section 1111 et seq. of the Code of Civil Procedure certainly provides a plain, speedy, and adequate remedy in such cases. In our opinion, these sections provide the *exclusive* remedy for setting aside or canceling the certificate of election issued as a result of the official canvass by the board of supervisors. (*Sweeny* v. *Adams,* 141 Cal. 560, [75 Pac. 182].) To hold otherwise must lead to incongruous results. If appellant could seek and procure a cancellation or amendment of the certificate of election through *mandamus,* then certainly any other citizen could invoke the remedy permitted under the sections last cited, and ask judgment according to the terms of section 1122 of the Code of Civil Procedure. It might frequently happen, if this was allowable, that the face of the returns would authorize such cancellation, while a count of the ballots would compel a very different result in the other proceeding. In that event there would be divergent judgments affecting the same office or right. This would be intolerable. The law will bear no such construction, and if it would, the law demands that it be given an interpretation which will avoid absurd results.

The judgment is affirmed.

Chipman, P. J., and Buckles, J., concurred.

A petition to have this cause heard by the supreme court after judgment in the district court of appeal was denied by the supreme court on July 25, 1905.