(December 8, 1919.)

CLARENCE L. ASHLEY, Appellant, v. GEORGE
RICHARD et al., Trustees of SCHOOL DISTRICT No.
76, Respondents.

[185 Pac. 1076.]

EQUITY JURISDICTION TO ENJOIN ISSUANCE OF SCHOOL DISTRICT BONDS—
SCHOOL DISTRICT ELECTION CONTESTS.

  1. No provision is made in the statutes of Idaho for contest-
ing the result of a special election held to authorize the issuance of
the bonds of a school district.

  2. In the absence of any other available remedy to prevent the
issuance of school district bonds in violation of art. 8, sec. 3, of
the constitution, a taxpayer of the district may maintain an action
in a court of equity to prevent the unauthorized issuance of such
bonds, even though an election contest is involved in the action,
in order to determine the lack of authority to issue the bonds.

APPEAL from the District Court of the Ninth Judicial
District, for Teton County. Hon. James G. Gwinn, Judge.

Action to enjoin issuance of school district bonds. From
a judgment dissolving the temporary injunction and dismiss-
ing the action, plaintiff appeals. *Reversed.*

Arthur W. Holden, Solon Orr and Perky & Brinck, for Appellant.

Injunction is a proper remedy to prevent the officers of a school district from issuing bonds unlawfully. (*Marlow v. School District No. 4,* 29 Okl. 304, 116 Pac. 797, 798.)

A taxpayer may restrain illegal action which would increase the burden of taxation. (*Gibson v. Board of Supervisors,* 80 Cal. 359, 22 Pac. 225, 227; *Nuckols v. Lyle,* 8 Ida. 589, 592, 70 Pac. 401.)

Since courts of equity thus interfere by injunction to prevent the illegal issuance of municipal obligations, it follows that they must extend the jurisdiction to the point of investigating and determining the validity of the election under which the proposed action is had. (2 High on Injunctions, 3d ed., sec. 1285.)

In such cases the jurisdiction is exercised, not with a view to contesting the election, but for the purpose of ascertaining whether the contract has been duly authorized in accordance with law. (*Winston v. Tennessee & P. R. Co.,* 1 Baxt. (Tenn.) 60, 67.)

The remedy by contest of election is inadequate. (*State v. Stearns,* 11 Neb. 104, 7 N. W. 743, 745.)

Defects and irregularities inhering in the election itself are frequently passed on by courts of equity in suits to enjoin bond issues based on such election. Question of improper ballot was considered in *Hartigan v. Los Angeles,* 170 Cal. 313, 149 Pac. 590. Question of blank and unintelligible ballots was considered in *City of Wellsville v. Connor,* 91 Ohio St. 28, 109 N. E. 526.

Where disqualified persons voted, and qualified voters' votes were rejected, the issuance of bonds based on such election was enjoined. (*Saxton v. Mayor etc. of Delaware City* (Del. Ch.), 88 Atl. 605.) Issue of bonds was enjoined where at the election the city council held that a majority of votes was cast for them but adopted erroneous rule in determining majority. (*Sears v. City of Maquoketa,* 183 Iowa, 1104, 166 N. W. 700.)

A case directly in point on the facts and clearly stating the reasons is *Redd v. Board of Supervisors,* 31 Gratt. (Va.) 695.

F. L. Soule, for Respondents.

Equity has no inherent power over election contest matters, as they constitute a political question, and in the absence of express power, given by statute or constitution, a court of equity is without jurisdiction in such matters, and where the statute provides a remedy by contest, that remedy is exclusive of equitable intervention. (Rev. Codes, sec. 5026; *Toncray v. Budge,* 14 Ida. 621, 95 Pac. 26; *Lansdon v. State Board of Canvassers,* 18 Ida. 596, 111 Pac. 133; *Scott v. McGuire,* 15 Neb. 303, 18 N. W. 93; *State v. Carlson,* 72 Neb. 837, 101 N. W. 1004; *Dickey v. Reed,* 78 Ill. 261; *McWhirter v. Brainard,* 5 Or. 426; *Robinson etc. v. Wingate,* 36 Tex. Civ. 65, 80 S. W. 1067; *Marsden v. Harlocker,* 48 Or. 90, 120 Am. St. 786, 85 Pac. 328; *Vickery v. Wilson,* 40 Colo. 490, 90 Pac. 1034; *Bennett Trust Co. v. Sengstacken,* 58 Or. 333, 113 Pac. 863; *Powers v. Hitchcock,* 129 Cal. 325, 61 Pac. 1076; McCrary on Elections, secs. 436, 437; *People v. Elbert District Court,* 46 Colo. 1, 101 Pac. 777.)

The remedy by contest is adequate. (*Dickey v. Reed,* 78 Ill. 261; *Gibson v. Board of Supervisors,* 80 Cal. 359, 22 Pac. 225; *Marsden v. Harlocker,* 48 Or. 90, 120 Am. St. 786, 85 Pac. 328; *State v. Carlson,* 72 Neb. 837, 101 N. W. 1004.)

RICE, J.—Appellant commenced this action in the district court to enjoin respondents from issuing certain bonds of a school district. The allegations of the complaint deemed material for the purposes of this opinion are, in substance, as follows: That two-thirds of the qualified electors of the school district who voted at the special election, held for the purpose of authorizing the issuance of the bonds, did not vote in favor thereof; that five persons named in the complaint who voted for the issuance of the bonds, and whose votes were counted therefor, were not qualified electors of the school district and were not entitled to vote at the special

election; that the judges and clerks of the election in declaring the result thereof, fraudulently, falsely and corruptly declared that fourteen of the total of forty-four votes had been cast against the proposed issuance of the bonds, when in fact, as the election officers well knew, nineteen votes had been cast against the bonds; that the election officers knowingly and wilfully refused and failed to count, and did not count, five of the nineteen ballots cast against the proposed bond issue; that had the five ballots been counted against the bond issue, and the result of the election declared honestly and in good faith, it would have shown that the proposed bond issue received less than a two-thirds majority, and that if the alleged illegal votes received had been eliminated from the total the proposed bond issue would have been defeated; that notwithstanding the existence of the facts hereinbefore set out, respondents declared the result of the election to be in favor of the issuance of the bonds, and will proceed to advertise, issue and negotiate the same unless enjoined by the court. The complaint also contained allegations of other irregularities in the conduct of the election. Appellant further alleged that he was a resident taxpayer and qualified elector of the school district; that he sues in behalf of the other resident taxpayers of the district, as well as for the benefit of himself, and that in case the bonds should be issued and sold his taxable property in the district would be assessed and taxed for the payment thereof and the interest thereon.

Upon filing of the complaint a temporary injunction was issued by the court. Respondents demurred to the complaint, and moved to strike certain portions thereof. The motion to strike was directed toward the portions of the complaint alleging misconduct of the election officers during the progress of the election, the alleged irregularities in the holding thereof, and the allegations as to the reception of illegal votes and the fraudulent refusal of the election officers to count the legal votes cast against the issuance of the bonds. The demurrer was overruled and the motion denied. Respondents thereupon answered, denying certain allegations of the complaint, but with respect to the portions of the

complaint which were specified in the motion to strike, respondents in their answer stated that they elected to stand upon the motion and the demurrer, and refused to further plead.

When the case was called for trial a stipulation was entered into and filed in the case to the effect that in both the trial and appellate courts all material matters of fact set up in plaintiff's complaint, and to which defendants had theretofore objected by their amended motion to strike, were to be deemed admitted without testimony in support thereof if the court finally decided that such matters were not subject to such objection, but in any event all rights under the said amended motion were to be reserved and not waived.

The court entered judgment, dissolving the temporary injunction and dismissing the action. The appeal is from the judgment.

As we understand the effect of the stipulation, it does not alter the situation presented by the pleadings. The demurrer and motion admitted the truth of the allegations of the complaint toward which they were directed, and such allegations were also admitted by failure to deny the same; but the objection that the allegations of the complaint did not confer jurisdiction upon the court is never waived.

It is urged by respondents that the real purpose of the action is to contest an election, and they contend that the statutes provide a method of contesting this election and that the procedure outlined by statute for such contest is exclusive of equity jurisdiction, and that therefore an action for injunction will not lie.

We are of the opinion, however, that our statutes fail to provide the procedure for contesting a school district bond election.

C. S., sec. 7274, provides that "the election of any person to any public office, the location or relocation of a county seat, or any proposition submitted to a vote of the people may be contested." In *Hertle v. Ball*, 9 Ida. 193, 72 Pac. 953, in construing this section in connection with what is now C. S., sec. 488, it was suggested that provision was not made

in our statutes for contesting school district elections. In *Toncray v. Budge,* 14 Ida. 621, 95 Pac. 26, it was held that election contests as such were unknown at common law, and all provisions or authority existing within the state for contesting an election were dependent upon the statute alone; that at the time of the adoption of the constitution, an election contest as such was neither recognized by the common law nor the statute law as "a case either at law or in equity," and such proceeding was therefore not necessarily included within the original jurisdiction of the district courts, as that jurisdiction is conferred by art. 5, sec. 20, of the constitution.

Since the right to contest elections is created and conferred by statute, it is necessary that provisions for such contest go further than to merely declare that certain elections may be contested. Provision must be made for parties, plaintiff and defendant, and some tribunal must be invested with jurisdiction to hear and determine the contest, and a method must be provided of conferring jurisdiction of the parties upon such tribunal.

C. S., sec. 7278, is as follows: "The district courts of the respective counties shall hear and determine contests of election in regard to the removal of county seats, and in regard to any other subject which may by law be submitted to the vote of the people of the county, and the proceedings therein shall be conducted as near as may be hereinafter provided for contesting the election of county officers."

C. S., sec. 7280, is as follows: "The election of any person declared elected to any office, other than executive state officers and members of the legislature, may be contested by any elector of the state, judicial district, county township, precinct, city or incorporated village in and for which the person is declared elected."

C. S., sec. 7283, is as follows: "Upon the filing of such complaint summons shall issue against the person whose office is contested, in the same manner as in civil actions, and a copy of the complaint shall in all cases accompany the summons."

The sections quoted above are practically the same as corresponding sections of the statutes of Nebraska. In *Thomas v. Franklin,* 42 Neb. 310, 60 N. W. 568, it is said:

"It will thus be seen that, while the legislature has provided that the validity of an election locating or relocating a county seat may be contested, it has not provided by whom such contest may be instituted and carried on. The proceeding for contesting an election provided for by this statute is, strictly speaking, neither an action at law nor in equity. It is a summary proceeding of a political character; and the proceeding cannot be maintained by any person, unless express authority therefor is found within the statute itself."

The holding in this case was followed in *Sebering v. Bastedo,* 48 Neb. 358, 67 N. W. 148, *Dodson v. Bowlby,* 78 Neb. 190, 110 N. W. 698, and *Barnes v. City of Lincoln,* 85 Neb. 494, 124 N. W. 99.

*Beason v. Shaw,* 148 Ala. 544, 42 So. 611, 18 L. R. A., N. S., 566, was a case where it was sought to contest an election to determine whether stock should be prohibited from running at large in a precinct. The statute expressly provided that such election might be contested upon the same ground and in the same manner as a contest for the election of a constable. The court found that the constable law was inappropriate, so much so that it could not be resorted to for the purpose of inaugurating a contest of an election held under the statute under consideration.

The case last mentioned was cited with approval and followed in the case of *Coleman v. Town of Eutaw,* 157 Ala. 327, 47 So. 703.

With regard to the matter under consideration, it will be noted that by section 7278, district courts are invested with jurisdiction to hear contests in regard to any subject which may be by law submitted to a vote of the people of the county. Matters submitted to a vote of the people of a school district are not expressly, nor by necessary implication, included in this section. Nowhere in the statute is authority conferred upon any elector or taxpayer to contest such an election, nor is any party pointed out by the statute to whom summons

may be issued or upon whom it may be served in such a contest.

The question remains whether, in the absence of a statutory method of contest, a court of equity has jurisdiction to enjoin the issuance of school district bonds alleged to be illegal, in that it is proposed to issue them without the assent of two-thirds of the qualified electors of the district voting at an election held for that purpose as required by the constitution, when, in order to determine the question of the illegality thereof, it becomes necessary in effect to hear and decide an election contest.

There are numerous authorities holding generally that a court of equity has no jurisdiction to determine an election contest of any kind. This would be the necessary conclusion from the principles announced in *Toncray v. Budge, supra,* where the purpose of the action is solely to contest an election.

In the recent case of *Link v. Karb,* 89 Ohio St. 326, 104 N. E. 632, in an able opinion it was held that an election belongs to the political branch of the government; that authority to try an election contest is not judicial power within the meaning of a constitutional provision which requires judicial power of the state to be vested in the courts; that a petition averring irregularities in the conduct of an election, at which a proposition to issue bonds is submitted to the electors of a city, presents no case authorizing a court of equity to interfere by injunction to prevent the issue of such bonds on the theory that the contest of the election is merely incidental to the suit, and that such petition presents no question of equitable jurisdiction whatever. In reaching that conclusion the court seems to have been influenced to some extent by the consideration that the constitution of Ohio expressly provided that "the general assembly shall determine by law before what authority and in what manner the trial of contested elections shall be conducted." It does not appear that the constitution of Ohio contains a provision prohibiting municipalities from issuing bonds unless the assent of a specified majority of the electors of the municipality is first obtained.

In the case of *Dickey v. Reed,* 78 Ill. 261, it is said:

"Courts of equity have no inherent power to try contested elections, and they have never exercised such power, except in cases where it has been conferred by express enactment or necessary implication therefrom."

In the opinion in the case last mentioned, however, a distinction is noted between the holding in that case and former Illinois cases, where it had been held that chancery had power to take jurisdiction of and to try a contested county seat election in that state. The court said:

"But the power was placed expressly upon the ground that the constitution had provided that county seats should not be removed except on a vote resulting in a majority in favor of a removal; and the General Assembly, in providing for the mode of holding such an election, wholly failed to provide for any means of contesting it. And, to prevent the obstruction and a defeat of the rights of the majority, conferred and intended to be secured to them, it was held that the fundamental law, by implication, conferred the power on the courts of chancery. But, in making these decisions, it was on that express ground, and those cases thereby became an exception to all other cases."

See *Boren v. Smith*, 47 Ill. 482, and *People v. Wiant*, 48 Ill. 263.

Art. 8, sec. 3, of our constitution provides: "No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . . . "

In the case of *Gibson v. Board of Supervisors*, 80 Cal. 359, 22 Pac. 225, referring to a similar constitutional provision, it was said:

"Whenever there is such a constitutional provision, and no machinery provided by law for enforcing it, the constitution, by necessary implication, confers upon the court of chancery jurisdiction to protect and enforce the will of the

people by suitable and proper procedure. This principle has been declared and followed in numerous cases where constitutions have provided for the removal of county seats; and we see no distinction, with respect to the point under discussion, between those cases and the one at bar."

See, also, *Calaveras County v. Brookway,* 30 Cal. 325, *Cerini v. DeLong,* 7 Cal. App. 398, 94 Pac. 582, *Poe v. Sheridan County,* 52 Mont. 279, 157 Pac. 185, and *Krieschel v. Board of Commrs.,* 12 Wash. 428, 41 Pac. 186, where the previous case of *Parmeter v. Bourne,* 8 Wash. 45, 35 Pac. 586, 757, was distinguished.

The jurisdiction of a court of equity to entertain an action, wherein it was sought to question and contest directly the declared result of an election held for the purpose of authorizing the issuance of bonds in aid of a railroad corporation, was upheld in the cases of *McDowell v. Massachusetts & S. Const. Co.,* 96 N. C. 514, 2 S. E. 351, and *Goforth v. Rutherford Ry. Const. Co.,* 96 N. C. 535, 2 S. E. 361. See, also, *Redd v. Board of Supervisors,* 31 Gratt. (Va.) 695, and *Jones v. Commissioners,* 107 N. C. 248, 12 S. E. 69.

As our statutes now stand, unless this action can be maintained the appellant and other taxpayers of the school district are without remedy, for no other remedy is available. It would be possible for interested persons, by fraudulent and corrupt conspiracy, in effect to nullify a provision of the constitution, and to procure the issuance of illegal school district bonds in direct violation thereof.

But we think the court has jurisdiction. As stated in the case of *Coleman v. Town of Eutaw, supra,* "the primary object and equity of the bill is to prevent the misuse of corporate power—the illegal creation of a debt against the municipality." The authorities are uniform in holding that courts of equity will prevent municipal corporations from issuing bonds which are unauthorized, or are without or in excess of the power of the municipality to issue. In the absence of any other remedy being provided to prevent violation of the constitutional provision above quoted, this action may be maintained to prevent the unauthorized issuance of

the bonds of the district, even though an election contest is involved in the action in order to determine the lack of authority to issue the bonds.

The case comes within the spirit of the following frequently quoted excerpt from the opinion of Mr. Justice Field in the case of *Crampton v. Zabriskie,* 101 U. S. 601, 25 L. ed. 1070:

"Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers."

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed. Costs awarded to appellant.

Morgan, C. J., and Budge, J., concur.