[No. 15195. In Bank. — October 14, 1892.]

H. H. WELCH, PETITIONER, *v.* A. C. WILLIAMS,  COUNTY CLERK OF FRESNO COUNTY, RESPONDENT.

STATUTORY CONSTRUCTION. — In the construction of a statute, all its provisions must be considered together, and must be reconciled as far as possible, and particular provisions must be so construed as to promote and not to defeat the general purposes and policy of the law.

ID. — OBJECT OF REGISTRATION LAW — CONSTRUCTION IN FAVOR OF RIGHTS OF VOTERS. — The object of the registration law is to prevent illegal voting by providing, in advance of election, an authentic list of qualified electors; and when its terms are doubtful, they should be so construed as to give the fullest opportunity to voters to procure the entry of their names upon the register that is consistent with reasonable precautions against fraudulent registration.

ID. — CONSTRUCTION OF POLITICAL CODE — TIME ALLOWED FOR NEW RE-
    GISTRATION. — Under section 1094 of the Political Code as amended in
    1889, providing that when the board of supervisors of any county shall
    require a new registration of the voters, the "registration shall com-
    mence one hundred days before a general election, and shall continue
    for eighty-five days thence next ensuing, when such registration shall
    cease," while the board of supervisors are prohibited from canceling
    the existing register and ordering a new registration less than one hun-
    dred days preceding a general election, they are not prevented from al-
    lowing more than one hundred days, and the registry of a name in the
    new register, made at any time after the old register is canceled, and
    more than fifteen days prior to the election, is lawful and valid, though
    made more than one hundred days before the election.

APPLICATION to the Supreme Court for a writ of man-
date. The facts are stated in the opinion of the court.

*W. D. Tupper*, for Petitioner.

*E. W. McKinstry*, for Respondent.

BEATTY, C. J. — The petitioner possesses all the quali-
fications of a voter of Fresno County, and prior to the
sixteenth day of January, 1892, his name was enrolled
upon the great register. At said date the board of su-
pervisors made an order canceling the great register,
and providing for a new and complete registration of the
voters of said county, and the respondent immediately
thereafter commenced making a new register. On the
17th of March following, the petitioner, upon his own
application and upon proper affidavit, had his name en-
tered thereon. His attention having been subsequently
called to the language of section 1094 of the Political
Code as amended in 1889, he concluded that such regis-
tration of his name — made, as it was, more than one
hundred days prior to the ensuing general election —
was invalid, and therefore within such hundred days
he applied to the respondent to register his name anew.
This demand having been refused, he asks a peremptory
mandate to enforce compliance.

The amended section 1094 reads as follows: "A regis-
ter, in which shall be entered the names of the qualified
electors of each of the counties in the state, shall be kept

at the office of the county clerk of such county, and in each of the cities and counties of the state such a register shall be kept in the office of the person charged with the registration of voters in such city or county. There shall be in each of the counties, and cities and counties, in the state (when required by the board of supervisors), a new and complete registration of the voters of such counties, and cities and counties, who are entitled thereto, and who apply with the proper proof. Such registration shall commence one hundred days before a general election, and shall continue for eighty-five days thence next ensuing, when such registration shall cease; provided, that nothing in this section shall be held to repeal any election or registration law applicable to or in force in the city and county of San Francisco."

If our attention were confined exclusively to the language of this section, it might seem to require the construction for which the petitioner contends, viz., that when a new registry is ordered, the work cannot lawfully be commenced more than one hundred days prior to the ensuing general election. But for the purpose of construing a statute, all its provisions must be considered together; they must be reconciled as far as possible, and particular provisions must be so construed as to promote and not to defeat the general purposes and policy of the law.

The object of the registration law is to prevent illegal voting by providing, in advance of election, an authentic list of the qualified electors. Necessarily, any efficient system of registration must involve a certain amount of inconvenience to voters, and probably under the best system that could be devised some qualified electors would lose their votes, through inability to avail themselves of the opportunities or to comply with the conditions of registration. The law should be so framed therefore, and when its terms are doubtful should be so construed, as to give the fullest opportunity to voters to procure the entry of their names upon the register that

is consistent with reasonable precautions against fraudulent registration.

The necessity of closing the registry some days prior to the election, and the danger involved in the registration of large numbers of persons during a short period immediately preceding its close, are apparent. But there does not seem to be any very weighty reason for narrowly limiting the beginning of the registry. On the contrary, it would seem to be better in every respect, not only with a view to the convenience and security of honest electors, but more especially for the purpose of challenging the right of such persons as may fraudulently procure their enrollment, to commence the registration as soon as practicable.

The registry law seems to have been framed in conformity with these views.

By its provisions the clerks and assessors of the respective counties were authorized to receive applications for registry, not at particular times or during restricted periods, but at all times; and the names of such applicants as appeared to be entitled to vote were entered on the register as received by the clerk, or as returned from month to month by the assessor. At the same time that the register was being gradually completed by this process, it was undergoing revision and correction by the cancellation of entries fraudulently procured, and of names of persons dying, removing from the county, convicted of crime, etc. By this means it was, or at least could be, constantly brought nearer and nearer a state of perfection, so that a copy of its uncanceled entries made prior to any election would furnish an accurate list of the persons entitled to vote thereat.

But although the law faithfully administered would have produced this result, it is equally true that inattention or neglect on the part of electors, and of the officers charged with the duty of purging the register, might, and no doubt frequently did, leave it largely encumbered with names of persons who had ceased to be voters. To remedy this evil the supervisors were empowered,

when necessary, to order a complete re-registration of the voters of the county. Such order, when made, was necessarily an abrogation or cancellation of the existing register, and rendered re-registration an essential condition of voting at the ensuing and all future elections. But such re-registration was conducted in precisely the same manner as the original registration. Application for registry could be made at any time, either to the clerk or to the assessor. Voters were not required to wait till any particular date after an order for re-registration before they could make their applications. The only limitation as to time was that imposed upon the board of supervisors by the provision requiring them to publish their order for re-registration not less than six months preceding the next ensuing general election.

Such was the general scheme of the registry law prior to the amendment of section 1094 of the Political Code, made in 1889, and certainly the system was far more convenient to the electors and far less expensive to the counties than it would be if registration were limited to a short period preceding each election. It also afforded a much better opportunity to investigate the right to vote of the persons enrolled, and to secure the cancellation of their registry where it could be shown that they were not entitled to the suffrage. Such, we repeat, was the registry law prior to the amendment of 1889, and the question is, whether it was, by that slovenly amendment to a single section, completely changed in its whole tenor and texture. We do not think it was. The section as amended does not require the construction contended for, but, on the contrary, is easily susceptible of a construction which harmonizes with the unamended sections and the system of which they are a part. The requirement that registration, when a new registry is ordered, must commence one hundred days before a general election means that it must commence at least that soon, and the effect of the requirement is, that the board of supervisors cannot cancel the old register and order a new one less than one hundred days before a general

election; they cannot, in other words, deprive the voters of that period of time within which to secure registration. But there is nothing in this provision to prevent them from giving a longer time, which, by various other sections, they are directly and impliedly authorized to do. The only words of the amendment which seem to conflict with this construction are the following: "And shall continue for eighty-five days thence next ensuing, when such registration shall cease."

It is very clear from this language that the legislature intended that registration should continue down to within fifteen days of the election, and then (for the purposes of that election) cease; and it is argued that if registration commences more than a hundred days before the election and continues only eighty-five days thence (i. e., from the date of commencement) next ensuing, it will cease sooner than was intended. But this difficulty disappears if the statute is read as it must be read to get its true sense. If, instead of saying "such registration shall commence one hundred days," etc., it had said "such registration shall commence at least one hundred days before a general election and continue for eighty-five days thence next ensuing," we should have seen at a glance that the eighty-five days during which registration must continue would commence, not necessarily with the commencement of the registration, but with the hundredth day before the election. This, although awkwardly expressed, is undoubtedly the meaning of the amendment; for otherwise the section as amended conflicts with and repeals numerous other sections, which it is impossible to suppose the legislature intended to sweep away without even mentioning them.

Our conclusion upon the whole matter is, that the board of supervisors are prohibited by the amendment from canceling the existing register and ordering a new registration less than one hundred days preceding a general election. They cannot allow less, but they may allow more, than one hundred days for re-registration, and it must cease fifteen days before the election

(for the purposes of that election). The registry of a name in the new register made at any time after the old register is canceled, and more than fifteen days prior to the election, is lawful and valid.

It is perhaps unnecessary to add that this opinion has no application to the special law governing the city and county of San Francisco.

The writ of mandate is denied.

DE HAVEN, J., GAROUTTE, J., PATERSON, J., and SHARPSTEIN, J., concurred.