[Civ. No. 19372.   First Dist., Div. One.   Apr. 5, 1961.]

GEORGE S. PERHAM, JR., et al., Respondents, v.
CITY OF LOS ALTOS et al., Appellants.

Anthony A. Lagorio, City Attorney, for Appellants.

Pillsbury, Madison & Sutro, Eugene M. Prince and Harlan
M. Richter for Respondents.

WOOD (Fred B.), J. pro tem.*—This is an appeal by the
city of Los Altos from a judgment declaring void certain
annexation proceedings conducted under the Annexation of
Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-
35326).

One of the bases of the judgment was a finding that on
the day the petition for annexation was presented and filed
with the city (November 17, 1959) the territory sought to be
annexed included more than 12 registered voters as shown in
the records of the county registrar of voters. (The evidence
showed that they numbered 14.)  The court concluded that
because there were more than 12 registered voters at the time
of such filing, this was not uninhabited territory and that all
acts done in this proceeding were void for want of jurisdiction.

*Assigned by Chairman of Judicial Council.

■ The city challenges this finding and this conclusion upon the ground that though there were 14 persons registered on the critical day, 8 had registered less than 54 days prior thereto, leaving only 6 who could be considered "registered voters" on that day. It argues that a person cannot vote at an election held in the area of his registration within 53 days after registering. It invokes an unfortunate dictum uttered by this member of this court in *People* v. *City of Richmond,* 141 Cal.App.2d 107 [296 P.2d 351]. We there held that "the statute requires one to be registered as of the place where he resides on the crucial day, the day of the filing of the petition" and then said "(Probably, also, he should be entitled to vote if an election were held in that area on that date)." (P. 116.) That statement is not correct. It is a question of residence and registration, not a question of voting, on that day.

The applicable statute, known as the "Annexation of Uninhabited Territory Act of 1939," consists of §§ 35300-35326 of the Government Code. Sections 35000-35006 are also applicable (§ 35301). Section 35302 declares that contiguous "uninhabited" territory may be annexed to a city pursuant to the provisions of this act.

"Uninhabited territory" is defined in these words: ". . . territory shall be deemed uninhabited if less than twelve registered voters reside within it at the time of the filing of the petition for annexation or the institution of proceedings of the city legislative body." (§ 35303.) The obvious purpose of this reference to the voter registration records is to furnish a convenient and ready means of ascertaining the number of legal residents of the territory. Registration is based upon the affidavit of the voter (Elec. Code, § 120) which must show the affiant's "place of residence and post-office address with sufficient particularity to identify it and to determine affiant's voting precinct" (§ 220, subd. (c); see also § 230, subd. 3). The rules for determining "residence" for the purpose of registration and voting show that it means legal residence or domicile. (§§ 5650-5661, especially § 5652.)

Residence at a given place for a specified period of time prior to registration is not required. It is required that the affiant state: "*I will be* at least *twenty-one years* of age *at the time of the next succeeding election,* a citizen of the United States 90 days prior thereto, and a *resident of the State one year, of the county 90 days, and of the precinct 54 days next preceding such election,* and will be an elector of this county at the next succeeding election." (§ 230; emphasis added.)

These residential requirements (1 year, 90 days, 54 days) are based upon the qualifications a person must have to vote at an election as prescribed by section 1 of article II of our state Constitution. They are not prerequisites to the act of registering as a voter. *It is one's present residence,* not duration of residence, *that one must declare upon registering.* To that end, the registrant is required only to say "[m]y residence is. . . ." (§ 230, subd. 3.)

Some confusion has arisen because of a statutory requirement that a person must have been registered 54 days or more prior to a given election in order to vote at that election. "Registration of electors shall be in progress at all times except during the 53 days immediately preceding any election, when registration shall cease for that election as to electors residing in the territory within which the election is to be held." (§ 122.) That, obviously, is a limitation imposed to facilitate the orderly and accurate preparation of voting lists for use at any election. It has no direct bearing upon the constitutional requirement that a voter reside in the precinct 54 days, in the county 90 days, or in the state one year prior to an election. A person may have possessed those qualifications many times over at the time of registration. Here, we are not concerned with this limitation. At the time the registrations in question were made (November 17, 1959, and various dates preceding) the next succeeding election, insofar as judicially cognizable, was the primary election scheduled to be held in June 1960, and there is no evidence that an election might sooner be held in the territory proposed for annexation. The filing of the petition for annexation was not an election and the applicable statute provides for no election.

The appellant attaches particular significance to the word "voters" in the expression "registered voters" as used in section 35303 of the Government Code, claiming a distinction between that and "registered electors." We do not see any substantial difference in the context in which "registered voters" is used, i.e., for the purpose of ascertaining residence. Insofar as statutory definitions are concerned, we observe that the Elections Code defines "elector" as any person "who qualifies under Section 1 of Article II of the Constitution . . ." (§ 20) and "voter" as "any elector who is registered under the provisions of this code" (§ 21).

These views are in harmony with the case law bearing upon this subject.

"The object of the registration law is to prevent illegal

voting by providing, in advance of election, an authentic list of qualified electors." (*Welch* v. *Williams* (1892), 96 Cal. 365, 367 [31 P. 222].) "The necessity of closing the registry some days prior to the election, and the danger involved in the registration of large numbers of persons during a short period immediately preceding its close, are apparent." (Same, p. 368.) "The period when, before the election, registration shall cease has been by the policy of the law made progressive toward placing impediments in the way of fraudulent colonization of voters. Formerly the period was fifteen days; it was afterward extended to thirty, and in more recent years to forty days. The period was probably extended, also, to give the county clerk more time in which to print and distribute the great register." (*Cerini* v. *DeLong* (1908), 7 Cal.App. 398, 409 [94 P. 582].)

A city charter provision that " 'only an elector who is a registered qualified elector shall be entitled to sign' " a municipal referendum petition, has been construed to mean that ". . . any registered elector who will be qualified to vote at the next succeeding election may sign such a petition." (*Ley* v. *Dominquez* (1931), 212 Cal. 587, 595-596 [299 P. 713].) It was not necessary that he wait until 30 days after registering (the period which has since been expanded to 54 days) to sign a referendum petition. Similar rulings were made in *Minges* v. *Board of Trustees* (1915), 27 Cal.App. 15, 17-19 [148 P. 816], and *Porter* v. *Blood* (1936), 15 Cal.App.2d 438 [59 P.2d 439]. Especially significant is the holding in the recent case of *City of Port Hueneme* v. *City of Oxnard* (1959), 52 Cal.2d 385 [341 P.2d 318]. That case involved an annexation proceeding under the same act as the instant proceeding. The trial court held the proceeding void because there were 14 registered voters residing in the territory sought to be annexed. When that annexation was first undertaken there were 18 adult residents but only 5 of them were registered. After the proposal for annexation had been submitted to the boundary commission but before the commission had reported thereon, 9 more of the residents registered to vote. "Immediately thereafter 'officials of Port Hueneme withdrew the first proposed boundaries . . . from consideration by the Boundary Commission and substituted therefor' boundaries revised so as to exclude three houses inhabited by eight of the 14 registered voters. These excluded houses were located on land which was in each case part of a larger parcel belonging to the same owner, the remainder of which larger

parcel was included within the so-called 'second proposed'. . . Annexation.'' (P. 390.) These facts supported the trial court's finding that the territory involved was not uninhabited and its conclusion that the proceeding was void. The Supreme Court affirmed the judgment. It does not expressly appear from the printed report whether more or less than 53 days elapsed between the dates of the 9 new registrations and institution of the proceedings by the city. It would not seem to matter which is true, as we read the decision.

We conclude that the evidence herein supports the trial court's finding that the territory sought to be annexed was not uninhabited and its conclusion that the proceeding was and is void. It, therefore, becomes unnecessary to consider other points discussed by the parties upon this appeal.

The judgment is affirmed.

Tobriner, Acting P. J., and Duniway, J., concurred.