[Crim. No. 12182. Second Dist., Div. Four. Aug. 17, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH TROMBINO, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip M. Rosten, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged in count I with forgery of a fictitious name (Pen. Code, § 470), and in count II with assault with a deadly weapon (Pen. Code, § 245). One prior was alleged. Defendant pled not guilty; trial by jury was duly waived; the cause was submitted on testimony contained in the preliminary transcript, subject to the trial court's rulings. The court found defendant guilty as charged. The prior was found to be true; probation was denied and defendant was sentenced to state prison with sentences on both counts to run concurrently. Defendant appeals.

On March 25, 1965, defendant opened a checking account in the amount of $50 cash at the Bank of America in Beverly Hills, under the name of Arne Bedrosian. On the same day he deposited in this account a counter check for $585, drawn on the Security First National Bank, Hillcrest Branch, in San Diego. The check dated March 21, 1965, was payable to Arne Bedrosian, and was purportedly signed by a Herman Connolly as maker.

■ Mr. Arnold Morss, an assistant manager of the Hillcrest Branch of Security First National Bank in San Diego, had occasion to check the books and records in his capacity as an assistant manager; he determined there was no account in the name of Harold Connolly. On cross-examination by defendant's counsel, Mr. Morss testified that his duties consisted of general duties, including checking of new account forms before they go into the computer, handling loans, handling personnel, okaying checks, opening the branch, opening and closing the vaults and other duties.

The next day, March 26, defendant made various other transactions at the Bank of America. The top of defendant's head was seen by Roy Anderson, an assistant manager, as he talked with an officer. Mr. Anderson had a conversation with a bank officer, went next door to a butcher shop, where he saw defendant coming towards him with a 24-inch butcher knife sharpener. Mr. Anderson blocked the doorway, a scuffle ensued, and defendant raised the object and struck Mr. Anderson three or four times. Mr. Anderson did not know whether

the object was a knife or not. Mr. Anderson and two other people restrained defendant.

The next day at the police station defendant was advised of his right to an attorney and to remain silent, and was told that anything he said could be used against him. Defendant said he understood his rights.

██ Defendant was asked if he had issued a $585 check to the Bank of America as a deposit, and he stated he had. He said he used the name of Conley or Connolly, but could not recall on which bank he had written the check. Defendant said that he made an initial deposit of $50 and a deposit of $585 plus about $30 to $40 in the account under the name of Arne Bedrosian.

Defendant contends that the prosecution failed to lay a proper foundation for the testimony of Mr. Morss, that the prosecution failed to establish the corpus delicti for forgery, that there was no showing of lack of authority to write the check and that defendant was not fully advised of his constitutional rights.

Both in the trial court and on appeal, counsel argued the admissibility of Mr. Morss' testimony as though it was hearsay subject to the exception of the business entry rule as codified at the time of trial in section 1953f of the Code of Civil Procedure.[1] But that rule is not the one involved.[2]

██ Testimony that a witness did not find a particular business entry is not hearsay; the witness speaks of his own knowledge when he testifies that he looked for a record and did not find it.[3] ██ The issue is one of materiality. The testimony that a witness did not find a record is meaningless unless (a) there is evidence that such a record would have existed if the transaction involved had taken place; (b) that the witness had looked for the record in the place it would have been had it existed; and (c) that the witness was competent to identify the record had it been where he looked.

In the instant case, the status of Mr. Morss supplies the

---

[1] Now section 1271 of the Evidence Code.

[2] Although counsel argued section 1953f to the trial court, his objection was stated in terms broad enough to have reserved the matter for our consideration.

[3] *People* v. *Torres* (1962) 201 Cal.App.2d 290 [20 Cal.Rptr. 315], is not directly applicable, since there the effort was to introduce the records themselves, so that the trier of fact would be the searcher. What was said there with reference to the proof necessary to show that the proper records had been searched is, however, helpful in the case at bench.

third of these elements. ▮ We may take judicial knowledge of the fact that national banks do keep regular records which disclose the existence of deposits made with them and the names of their depositors. The problem is as to the second element. As counsel pointed out at the trial, Mr. Morss did not testify that he had the custody of, or supervision over, the records showing the names of depositors or the status of their accounts, nor was he asked, and he did not testify that he knew, of his own knowledge, that the records which he did search were the complete records. The brief testimony was that ''as an Assistant Manager'' he had ''occasion to check the books and records of the bank to determine whether or not there was an account in the name of Herman Connolly.''[4]

▮ It is, of course, true that, since the issue is not of admitting hearsay under the business entry exception, it is not legally necessary that the second element be supplied by the testimony of a witness who is either the immediate custodian of the records or his supervisor; any witness who has the requisite knowledge of the system of record keeping may testify. While it would have been better practice to have asked Mr. Morss expressly whether or not he had such knowledge, we conclude that, on this appeal, the evidence of Morss' official position carried with it the implication that he had enough familiarity with the bank's operations to have looked in the proper place.

▮ It follows that the corpus delicti was proved with sufficient certainty to make admissible defendant's extrajudicial statements, if those statements were lawfully obtained, and that the totality of the evidence was sufficient to sustain the conviction on count I.

## II

▮ Defendant argues that the warnings given to him, although adequate under *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], did not meet the additional standards imposed by *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Since the trial was prior to June 13, 1966, only the *Dorado* rules were applicable. (*People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

---

[4]Literally, of course, the question asked, and the answer, adduced only the fact that an ''occasion'' for search had existed. We treat the testimony, in spite of this semantic confusion, as it clearly was intended and understood, as testimony that Mr. Morss had, in fact, checked the records.

## III

By a supplemental brief, counsel asks us to consider the contention of his client that he had a defense to the charge made in count II, that he had told his trial counsel about it but that the attorney nevertheless had recommended the procedure actually followed—namely submission on the preliminary transcript without any defense testimony.

In the first place, since we consider on appeal only matters before the trial court, the contention is not properly before us. But, even if it were, the showing made falls far short of that required to invoke *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]. It is part of the function of trial counsel to determine whether or not his client's story is such as to affect the result of the case. When (as it is here admitted that he did) he discusses the tactical decision with his client, and the client, after that discussion, accepts counsel's advice, it cannot be said that the trial was thereby reduced to a "sham."

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.