[Civ. No. 28707. First Dist., Div. Four. Oct. 17, 1970.]

PETER KEANE et al., Petitioners, v.
EMMERY MIHALY, as Registrar of Voters, etc., et al., Respondents.

1038

■■■■■■■■■■■

## COUNSEL

Paul N. Halvonik and Charles C. Marson for Petitioners.

Thomas M. O'Connor, City Attorney, and Burk E. Delventhal, Deputy City Attorney, for Respondents.

## OPINION

**DEVINE, P. J.**—The constitutionality by standards of the Constitution of the United States of the one-year residency requirement for voting in California (Cal. Const., art. II, § 1) is challenged by petition for writ of mandate, which was filed with the Supreme Court of California and assigned by that court to us.

Petitioners are graduates of the Law School of Southern Methodist University and are admitted to practice in California. They allege that they came to San Francisco on November 29, 1969, immediately established

residence therein, and have remained residents continuously since that date. They allege that they meet every requirement for voting in this state except that they will not have been residents of the state for one year preceding the November 3, 1970, election. In July 1970, well within the deadline for registering for the upcoming election, petitioners appeared in the office of the registrar of voters and attempted to register. It is alleged that they were refused registration solely on the ground that they did not meet the one-year residency requirement.

In the answer and return to the alternative writ, respondents deny the above facts for lack of information or belief, except that respondent Mihaly admits and alleges that he refused to register petitioners because they did not "meet the qualifications imposed by law." A fair interpretation of the pleadings is that the one year's residency requirement alone caused the denial of registration.

## I. *The Issue of Mootness*

■ The first question is whether the petition is moot because the deadline for registration, September 10, 1970, has passed. We hold that it is not moot. Elections Code, section 203 provides: "Registration of electors shall be in progress at all times except during the 53 days immediately preceding any election, when registration shall cease for that election as to electors residing in the territory within which the election is to be held." Respondents argue that their authority to register voters for the November 3, 1970, election terminated on September 10, 1970. Therefore, they contend, the petition is moot, as mandate will not lie when respondents no longer have legal authority to discharge an alleged duty because the time for so doing has expired. (*Treber* v. *Superior Court,* 68 Cal.2d 128, 134 [65 Cal.Rptr. 330, 436 P.2d 330].) Petitioners attempted to register within the deadline, and if their challenge to the residency requirement is meritorious, they were unlawfully denied the right to do so.

■ Section 217 of the Elections Code provides: "No person shall be registered except as provided in this chapter unless upon the production and filing of a certified copy of a judgment of the superior court directing registration to be made." Section 350 of the Elections Code provides: "If the county clerk refuses to register any qualified elector in the county, the elector may proceed by action in the superior court to compel his registration." Wherefore, the Elections Code provides a procedure by which the courts may direct registration, even after the deadline has passed, if a qualified elector has been denied registration. Petitioners sought relief in the superior court, as provided in section 350. If respondents' argument be sustained, there would be no remedy in a case of arbitrary refusal by the

registrar of voters to accept registrations on the last day of the registration period. ■ The purpose of section 203 is to facilitate the orderly and accurate preparation of voting lists (*Perham* v. *City of Los Altos,* 190 Cal.App.2d 808, 810 [12 Cal.Rptr. 382]), and to prevent illegal voting by providing, in advance of an election, an authentic list of qualified electors (*Welch* v. *Williams,* 96 Cal. 365, 367 [31 P. 222]). Neither purpose would be served by interpreting section 203 to be an absolute prohibition against registration less than 53 days before an election, even though a qualified elector can show that he was unlawfully denied the opportunity to register before the deadline.

## II. *The Issue of Constitutionality*

Preliminarily, we observe that petitioners do not attack the validity of the registration statutes or the requisite of 90 days' residence within a county, but only the provision that citizens must be residents of the state for one year in order to vote. An exception to the one-year residency requirement is made for presidential elections; persons who have resided in the state for at least 54 days but less than one year are entitled to vote in California for presidential electors only, if they meet all other eligibility requirements, and if they are qualified to vote in the state from which they came. (Cal. Const., art. II, § 1½; Elec. Code, § 751.)[1]

### 1. *The Standard To Be Applied*

■ The standard of equal protection as applied to cases involving the right of citizens to vote, as established in recent years by the United States Supreme Court, and as firmly expressed by the Supreme Court of this state, is that the exclusion from franchise must be necessary to promote a compelling state interest. (*Kramer* v. *Union Free School Dist.,* 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886]; *Cipriano* v. *City of Houma,* 395 U.S. 701 [23 L.Ed.2d 649, 89 S.Ct. 1897]; *Otsuka* v. *Hite,* 64 Cal.2d 596 [51 Cal.Rptr. 284, 414 P.2d 412]; *Castro* v. *State of California,* 2 Cal.3d 223 [85 Cal.Rptr. 20, 466 P.2d 244].)

The standard now prevailing has superseded the older one which still obtains in many matters of less fundamental importance: that regulatory distinctions among persons established by state constitutions or statutes must be sustained against equal protection challenge unless they amount to an irrational or unreasonable discrimination. The older standard was applied in *Drueding* v. *Devlin,* 234 F.Supp. 721, 725, in which residential requirements of the State of Maryland (one year in the state, six

---

[1]See, however, Voting Rights Act Amendments of 1970 (Public Law 91-285; 84 Stat. 314), reducing this time to 30 days.

months in the county) for voting in elections for President and Vice President of the United States were upheld.[2] The decision of the United States District Court was affirmed by the United States Supreme Court (380 U.S. 125 [13 L.Ed.2d 792, 85 S.Ct. 807]) in a per curiam opinion which says no more than, "The judgment is affirmed." Respondents urge that we must or should regard ourselves bound by the *Drueding* decision as thus affirmed, and also by the decision of *Pope* v. *Williams*, 193 U.S. 621 [48 L.Ed. 817, 24 S.Ct. 573], rendered in 1904. In the *Pope* case, which sustained the validity of a Maryland durational residency statute, the concept of equal protection of the laws was so far removed from the suffrage laws that the court remarked that a state could limit, constitutionally, voting to native citizens. The court expressed doubt that a state could have a different residency requirement for those who came from one state than for those who came from another, but even in this hypothetical case, reserved its opinion. It was not until 1965, in *Carrington* v. *Rash*, 380 U.S. 89, 95 [13 L.Ed.2d 675, 679, 85 S.Ct. 775], that the Supreme Court held that the equal protection clause applies to state qualifications for voting. The standard of necessity for a compelling state interest was set down in 1969 in *Kramer* v. *Union Free School Dist.*, 395 U.S. 621 [23 L.Ed.2d 583, 89 S.Ct. 1886], and *Cipriano* v. *City of Houma*, 395 U.S. 701 [23 L.Ed.2d 649, 89 S.Ct. 1897].

Thus, while we surely would follow the *Pope* and *Drueding* cases had not the United States Supreme Court in later cases established a new standard, and the Supreme Court in this state clearly recognized and announced the change, we should be dishonoring rather than respecting the decisions of the highest tribunal of our nation if we did not follow its later expressions of constitutional interpretation.

■ Respondents argue that the new standard applies only when the classification is of the "suspect" kind, a motive for unfair discrimination being discernible. But in *Castro* v. *State of California*, 2 Cal.3d 223 [85 Cal.Rptr. 20, 466 P.2d 244], the Supreme Court of this state remarked (at pp. 229-230) that its consideration of the motives which brought about the literacy test, although relevant to an understanding of the court's conclusion, was in no way crucial to that holding.

■ Two recent decisions by three-judge United States District Courts have applied the "compelling necessity" standard to voter residency requirement laws and have held, respectively, that 'the one-year constitu-

---

[2] One example given by the judge of the district court was that Congress, in implementing the Twenty-Third Amendment, which gives the right to vote for electors for President and Vice President to residents of the District of Columbia, enacted a one-year residency requirement. This has been reduced to 30 days by the Voting Rights Act Amendments of 1970 (Public Law 91-285; 84 Stat. 314).

tional provision of the Commonwealth of Massachusetts is invalid (*Burg v. Canniffe* (D.C.Mass. 1970) 315 F.Supp. 380), and that the one year and three months' durational residency requirement of the State of Tennessee likewise is unconstitutional (*Blumstein* v. *Ellington* (M.D.Tenn.) —— F.Supp.—— [Civil Action No. 5815, Aug. 31, 1970]).

In *Sei Fujii* v. *State of California,* 38 Cal.2d 718, 730-731 [242 P.2d 617], the Supreme Court of this state, recognizing that the latest declarations of the United States Supreme Court on the California Alien Land Law were irreconcilable with the approach previously taken in a case which had not been overruled (and in which, unlike the *Drueding* case, there had been a full-fledged opinion), followed the more recent decisions.

■ We accept, therefore, and we proceed to apply to the case at hand the constitutional principle that the franchise may be denied to citizens only if the end be protection of a compelling interest of the state and if the means taken are necessary. Respondents have suggested two general reasons for upholding the residency rule. The first is the need for having an informed electorate, and the second, the need for preventing fraudulent or false declarations of residency.

## 2. *Voters' Information*

We observe at the outset that the one-year residency requirement was created in 1879. It has remained (with the exception noted as to voting for electors in presidential elections) ever since. Its antiquity would be no argument against its validity had not the test necessary to support it, necessity to protect compelling state interest, come into being as the overriding standard, deriving as it does from the Constitution of the United States, the supreme law of the land.

The formal channels of voters' education and information are immeasurably wider and more numerous than they were almost a century ago. The wealth of information available from newspapers (which frequently give elaborate summaries a few weeks before elections), as well as that which is presented by radio and television, exceeds beyond description that which was available in 1879. Even the telephone, although patented in 1876, was virtually unknown in a practical way here. A six-mile line installed in 1882 near Ontario in Southern California was heralded as the longest in the world. (Hunt, California Firsts (Fearon Publishers, San Francisco 1957) p. 53.) Curiously, those who voted on the Constitution of 1879 had to be residents of the state for six months only under the earlier Constitution of 1849. These voters were expected to inform themselves of the complete Constitution within two months, because

it was completed by the Convention on March 3, 1879, and was voted upon on May 7 of that year. (The vote was 77,959 for and 67,134 against adoption: Davis, History of Political Conventions in California, 1849-1892 (Sacramento 1893) p. 393.) It is hardly necessary to make reference to the immense growth of higher education and secondary education in the 91-year period.

It is to be noted, too, that voters of whatever length of residency in the state cannot have information about some important issues until a time much less removed than one year from the election. They learn who are the candidates for state election (and sometimes for other offices, including judgeships) only after the primary elections.

In the matter of measures submitted to the voters, the law carefully prescribes that the official information shall not be given at a date too far removed from the election. Section 3573 of the Elections Code provides that the county clerk shall commence to mail one copy of the ballot pamphlet to each voter not more than 40 nor less than 15 days before the day fixed by law for the election, and no other official publication of the measures to be voted upon shall be made. It further provides that the mailing of the ballot pamphlets shall be completed at least 10 whole days before the election. There is, therefore, legislative recognition of the need for presenting to the voters the information on measures which may require some examination for intelligent voting at a time not too far removed from the election.

Respondents make reference to the amorphous matter of political acclimatization. Probably a certain amount of sensitivity to the problems of the state is gained as residence becomes longer, but to say that in order to cast an informed vote it is necessary to have the whole year which was selected in 1879 is another matter. In so far as the exchange of information by personal contacts and political conversations is concerned, we observe that, here again, the opportunities and the inducements for participation are exceedingly wider than they were nearly a century ago. From 1879 to 1911 only males were allowed to make use of the ballot in this state. The contacts, both in family and in social life, of male and female voters are a constant source of opinion. The market place for ideas has been broadened immeasurably. Besides, the voter did not have the opportunity, which stimulates inquiry, of voting for United States Senator until 1914 (Cal. Const., art. V, § 20; a preference primary had existed since 1909 [Stats. 1909, ch. 405, § 2, p. 691]), or of voting by initiative or referendum until 1911 (West's Ann. Code, Historical Note to California Constitution, art. IV, § 1).

As the concluding paragraphs of this opinion will explain, our holding

will not preclude the Legislature from taking into account whatever is necessary in order to protect the interest of the state.

### 3. *Fraudulent or False Declarations*

Respondents suggest that the one-year residency requirement is necessary to prevent fraudulent use of the electoral machinery, and that if it were not retained a large number of additional deputy registrars would be needed. In so far as actual fraud is concerned—that is, false declarations knowingly being made—it does not appear from what is before us that the registrars do have need for, or do in practice accomplish, a checking of the voters' declarations. But if additional time is needed beyond the 53 days, no doubt the Legislature will provide it.

There is also the subject of false, though not necessarily fraudulent, declarations. The "animus manendi" or intent to make the state one's home indefinitely may more surely be determined to exist, even by the declarant's own reflections, the longer one has resided in the state. But, bearing in mind the "close constitutional scrutiny" which must be given to the subject of voting restrictions (*Evans* v. *Cornman,* 398 U.S. 419 [26 L.Ed.2d 370, 374, 90 S.Ct. 1752], we are not persuaded that a whole year is necessary. There is danger of the "fencing out" which has been held unallowable. " 'Fencing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible." (*Carrington* v. *Rash,* 380 U.S. 89, 94 [13 L.Ed.2d 675, 679, 85 S.Ct. 775].)

Since it has been established in *Castro* v. *State of California, supra,* that persons literate in Spanish may not be denied the right to vote, even though their access to information may be somewhat more limited than that of their English speaking and reading fellow citizens, it seems logical that the English speaking and reading citizen of a considerable residency, even though it be not of a year's length, should not be deprived of that right which "is protective of all fundamental rights and privileges." (*Evans* v. *Cornman, supra,* at p. 374 [26 L.Ed.2d].)

In times when the citizenry is specially exhorted to live within the law and to seek what they desire within the law, it seems particularly appropriate to insure to citizens of the United States the right to express themselves by use of the ballot.

### III. *Effect of Decision*

We hold that the one-year residency requirement for voting, in the Constitution of California (art. II, § 1) does not meet the standard of

necessity to enforce a compelling state interest—the standard established by the equal protection clause of the Fourteenth Amendment—and is invalid.

█ The Legislature is free, however, to establish such residency requirement, if any there be, which is necessary to protect compelling state interest, in addition to the 90-day county residency requirement which remains untouched by our decision.

We are mindful of the fact that decisions of this court are not final until 60 days from the date of rendition; hence, without action by the Supreme Court, a decision for petitioners to be effective forthwith for the election of November 3, 1970, cannot be made by us. But, the matter having been assigned to this court, we make our resolution of the problem and we direct the issuance of the writ.

A peremptory writ will issue commanding respondent registrar of voters to register petitioners as voters.

Rattigan, J., and Christian, J., concurred.