[Civ. No. 2061. Fifth Dist. Nov. 2, 1973.]

GLENN FROEHLICH et al., Plaintiffs and Appellants, v.
BOARD OF DIRECTORS OF THE ROSEDALE-RIO BRAVO
WATER STORAGE DISTRICT, Defendant and Respondent.

COUNSEL

Deadrich & Bates and Thomas A. Tutton for Plaintiffs and Appellants.

Oran W. Palmer for Defendant and Respondent.

OPINION

**BROWN (G. A.), P. J.**—Plaintiffs and appellants, Glenn Froehlich, R. T. Hergesell and W. S. Kimmel, are electors in the Rosedale-Rio Bravo Water Storage District, located in Kern County. The district is organized under the Water Storage District Law, division 14 of the Water Code (§§ 39000-48401).[1]

On November 28, 1972, pursuant to sections 42301, subdivision (b), and 42525, the district called an election for the purpose of submitting to the voters of the district the proposition of whether the report and recommendation of the board of directors of the district on the proposed cross-valley canal contract should be adopted.

Only the holders of title to land within the district are eligible to vote. (§ 41000.) There are two vote classifications: The first, known as the "A" ballot, is the number of persons who vote for or against the adoption of the report and recommendation; the second is the "B" ballot, under which each voter may cast one vote for each $100 or fraction thereof of assessed value of his land within the district. (§§ 41001, 42550.)

On the canvass of the election results, it was determined that the electors decided that the proposition should be adopted by a vote of 118 to 98 on the "A" ballot, a difference of 20 votes, and by 10,261 to 8,934½ on the "B" ballot.

Appellants filed this action pursuant to sections 41900-41905, alleging the board of directors and the precinct board were guilty of malconduct. (§ 41901; Elec. Code, § 20021, subd. (a).) Their attack is directed solely toward the "A" ballot vote (one vote for each qualified voter), not the "B" ballot (voting basis—assessed valuation of land).

The trial court found against the appellants and confirmed the result of the election.

---

[1] All references are to the Water Code unless otherwise indicated.

Appellants presented evidence that a total of 22 additional "no" votes would have been cast against the proposition had they been permitted, a sufficient number to have defeated the proposition. These 22 votes are comprised of the following:

(a) Two witnesses testified that although they were eligible to vote by virtue of their ownership of land, they did not vote because they did not receive notice of the election and therefore assumed they did not have the right to vote. Upon the sustaining of an objection to similar testimony, appellants made an offer of proof that they had six additional witnesses who would have similarly testified.

(b) Ten persons who appeared at the polling place and attempted to vote but were not allowed to do so because their names did not appear on the assessment roll which was used in determining eligibility to vote. An additional witness testified that he attempted to vote a proxy for another person but was not permitted to do so because the other person's name did not appear on the assessment roll.

(c) A witness testified that he attempted to vote two proxy votes but was allowed to vote only one. The reason for denying the second vote does not appear.

(d) One witness testified that she heard she would not be allowed to vote because her name was not on the assessment roll, and by the time she got her deed and returned to the polls they were closed.

(e) Finally, one member of the board of directors told one female voter that it was not necessary that both husband and wife vote if they were joint owners of the land. As a result, she did not vote.

Regarding the electors who did not receive personal notice, we note that the trial court found that notice was properly given. The only notice required is that it state the time, place and purpose of the election (§ 41552) and that it be posted in three public places for 20 days and be published once a week for three successive weeks (§ 41551). There is no statutory requirement that the electors receive personal notice by mail. It is therefore manifest that the nonreceipt of personal notice does not excuse the failure to vote or require the district to count the votes of those involved. We also mention in this connection that it appears from the record that these persons did not attempt to exercise their franchise though they knew of the election. A prerequisite to challenging the vote count by an elector is an attempt on his part to vote and a refusal to permit him to do so. If these persons had gone to the polling place they may have been permitted to vote. At least it cannot be said that they were refused that

privilege. (*Webster* v. *Byrnes* (1867) 34 Cal. 273, 276.) Thus it was proper for the court to have disallowed these eight votes.

█ Appellants' principal assertion is that the assessment roll which was used in determining eligibility to vote did not contain all the names of owners of undivided interests and that, in violation of section 39052,[2] owners whose names did not appear on the assessment roll were deprived of the right to vote. It is not disputed that all of the names of the owners did not appear on the assessment roll.

The Water Code prescribes a comprehensive procedure for the preparation of the assessment rolls and the use of such rolls in elections to determine the qualification of voters and the number of votes each voter is entitled to cast. (See Appendix 1.)

Thus, with the exception of where property has been conveyed prior to the election and the change of interest does not appear on the assessment roll (§ 41011),[3] the statutory scheme of preparing the assessment roll, procedures for objecting thereto and for eventual certification thereof are, for the purpose of voting in the district election, analogous to the procedure for registering to vote in a general election; and persons who do not register to vote in a general election in accordance with the appropriate procedure are not eligible to vote. (*Falltrick* v. *Sullivan* (1898) 119 Cal. 613, 618 [51 P. 947]; *Bergevin* v. *Curtz* (1899) 127 Cal. 86, 88-89 [59 P. 312]; *Keane* v. *Mihaly* (1970) 11 Cal.App.3d 1037, 1041 [90 Cal.Rptr. 263]; *McMillan* v. *Siemon* (1940) 36 Cal.App.2d 721, 729 [98 P.2d 790]; *Cerini* v. *De Long* (1908) 7 Cal.App. 398, 408 [94 P. 582].)

It is true that this may inconvenience some voters and probably even preclude many others from voting. However, the purpose of the voting registration law is to facilitate the orderly and accurate preparation of the voting lists and to prevent illegal voting by providing in advance of the election an authentic list of qualified voters. (*Keane* v. *Mihaly, supra,* 11 Cal.App.3d 1037, 1041; *City of Coronado* v. *San Diego Unified Port District* (1964) 227 Cal.App.2d 455, 467 [38 Cal.Rptr. 834], app. dism. 380 U.S. 125 [13 L.Ed.2d 792, 85 S.Ct. 806].) Thus as stated in *Welch* v. *Williams* (1892) 96 Cal. 365 [31 P. 222]: "The object of the registration

---

[2]Section 39052 provides: "The holder of title to an undivided interest in land affected by any of the provisions of this division may sign any petition or vote at any election provided for in this division, and such undivided interest shall be counted and valued as though it were a separate interest."

[3]See Appendix 1 for the provisions of section 41011. The evidence in the case at bench shows that a number of people whose names did not appear on the assessment roll complied with section 41011 by displaying to the election board a certified copy of the deed evidencing their title and were allowed to vote.

law is to prevent illegal voting by providing, in advance of the election, an authentic list of the qualified electors. Necessarily, any efficient system of registration must involve a certain amount of inconvenience to voters, and probably under the best system that could be devised some qualified electors would lose their votes, through inability to avail themselves of the opportunities or to comply with the conditions of registration." (96 Cal. 365, 367.)

No provision of the Water Storage District Law requires the board to procure title reports or otherwise check the names of persons appearing on the assessment roll against the recorded documents to assure that the assessment roll contains the names of all legal owners. Such a prerequisite to the establishment of a valid voting list would be an intolerable burden upon the district, making obvious the reason why the Legislature has not imposed the requirement.

In our view the responsibility rests with the landowner to assure his name appears upon the assessment roll and that he is eligible to vote. Means are provided for accomplishing this: He can have his name inserted as an assessee by going to the assessor's office (Rev. & Tax. Code, § 610); he can have the correction made during the preparation and certification of the assessment roll (§§ 46200-46210, 46225-46257); or he can take a certified copy of his deed to the polling place during the election hours (§ 41011). If a landowner does none of these and is denied the right to vote solely because his name is not on the assessment roll, he has no ground to complain.

At the oral argument appellants claimed that the 10 persons who tried to vote and were not permitted to do so because their names were not on the assessor's roll and the one proxy vote which was disallowed for the same reason were misled by the notice published. It stated in part, "NOTICE IS HEREBY FURTHER GIVEN that only holders of title to land within the District are entitled to vote." The notice did not refer to the assessment roll as being the basis for determining the qualification to vote. They argue that in fact these persons were holders of title to land, as the notice required, and yet they were not permitted to vote because their names did not appear on the assessment roll.[4]

In order to avoid any confusion as to the persons who are qualified to vote at district elections, it would be desirable and better practice for the published notice to state that the assessment roll is the basis upon which

---

[4]None of the witnesses, however, testified or offered to testify that he relied upon the published notice.

the qualification to vote is to be determined. However, we need not reach this question because (1) it was raised for the first time at oral argument in this court (*Crowder* v. *Lyle* (1964) 225 Cal.App.2d 439, 450 [37 Cal.Rptr. 343]; *People* v. *Trombino* (1967) 253 Cal.App.2d 643, 648 [61 Cal.Rptr. 634]), and (2) the 10 votes referred to could not have changed the result of the election. This follows because the eight electors who claimed they did not vote because they did not receive a notice, as hereinabove indicated, have been eliminated. Thus, upon the elimination of the eight votes there remains a total of 14 votes which, according to appellants, should have voted and would have voted "no," a number insufficient to have changed the election result; therefore, if, because of the faulty language in the notice, the trial court erred in not counting the 10 votes, the error was harmless. (*Huston* v. *Anderson* (1904) 145 Cal. 320 [78 P. 626]; 17 Cal.Jur.2d (rev. ed.) Elections, § 238.)

The same observation and conclusion is applicable to the proxy vote which was not allowed (§§ 39030, 41002, 41005) and the vote which was not cast because of the representation by a member of the board of directors to one of the electors.

The judgment is affirmed.

Gargano, J., and Franson, J., concurred.

## APPENDIX 1

Water Code section 41000 provides:

"Only the holders of title to land are entitled to vote at a general election."

Water Code section 41016 provides:

"The assessment rolls and lists shall be used by the election boards in determining the qualifications of voters and the number of votes each voter is entitled to cast."

Water Code section 39050 provides:

"For all purposes of this division relating to signing petitions and voting at any election, and for all other purposes when the question of title to or value of land claimed to be owned by a petitioner or voter is involved, the county assessment roll, last equalized at the time of the election or filing of the petition, in each affected county is sufficient evidence of ownership and value."

Water Code section 41013 provides:

"The department prior to the formation election, and at all subsequent elections the board, shall prepare, certify, and furnish to the election board at each voting place in the district a copy of each of the assessment rolls pertaining to any land in the precinct."

Water Code section 41020 provides:

"The valuation made by the county assessor shall be furnished to the election

board of the precinct in which the land is situated and shall be used by the election board in determining the number of votes which the holder of title to the land is entitled to cast."

Water Code section 41011 provides:

"Where property has been conveyed prior to the election and the change of interest does not appear by the assessment roll, the original deed of conveyance or a copy thereof certified by the county recorder, or otherwise authenticated, shall be sufficient evidence to entitle the holder thereof to vote the acreage therein described."

Sections 46200-46210 set forth the applicable procedures for establishing the assessment roll, including publication thereof and allowance for time to object thereto. Sections 46207 and 46225-46257 prescribe procedures for objecting thereto, and sections 46208, 46209 and 46256 provide for the steps for verification of the assessment roll after receipt of all objections. Section 46210 states in part: "Upon filing of the certificates of the secretary of the board . . . the assessment roll and the assessments therein made shall be final and conclusive, and no action or defense shall ever be maintained attacking them in any respect. . . ."