Filed 8/24/15  P. v. Dahlke CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049372 |
| v. | (Super. Ct. No. 12WF3497) |
| DANA ANN DAHLKE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald E. Klar, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

In October 2013, a jury found defendant guilty of one count of second degree commercial burglary (Pen. Code, §§ 459-460, subd. (b); count 1) and one count of petty theft (Pen. Code, §§ 484, subd. (a), 488; count 2). The court sentenced defendant to the low term of 16 months in county jail on count 1, and stayed the sentence on count 2 pursuant to Penal Code section 654. The court found defendant had one prison prior (Pen. Code, § 667, subd. (b)) and thus imposed one additional year of jail, for a total sentence of two years four months.

This is a shoplifting case in which defendant indisputably paid for certain items. The People contend defendant did not pay for a vest she had put on and was wearing when she paid for other items at the register. On appeal, defendant contends the court prejudicially erred by admitting two pieces of evidence. First, the court permitted a loss prevention officer to testify that she reviewed the receipt for the items defendant paid for, and the receipt did not list the allegedly stolen vest. The receipt itself was not produced at trial. Second, defendant contends the court erred by permitting a loss prevention officer from a different store to testify to an earlier theft under Evidence Code section 1101, subdivision (b), to demonstrate defendant intended to steal in this case.

As to the receipt, we agree it was error to admit the testimony, but we conclude the error was harmless as there was ample evidence demonstrating defendant stole the vest in question. As to the evidence of the prior theft, we conclude the evidence was admissible under Evidence Code section 1101, subdivision (b), and there was no abuse of discretion in admitting the evidence under Evidence Code section 352.

FACTS

Nancy Daza is a loss prevention detective for T.J. Maxx, who, on November 30, 2012, was covering a store in Fountain Valley. The store had closed-circuit television monitoring. At approximately 1:30 p.m. Daza began observing the

2

defendant through the cameras. She observed defendant for approximately 40 minutes. At some point during that period, defendant removed a black vest from a rack and put it on. The price of the vest was approximately $60. Daza also saw defendant place the attached security sensor in the armpit of the vest and tuck the tags inside the vest.

After collecting several pieces of merchandise, defendant entered the fitting room. Approximately 15 minutes later, defendant left the fitting room, returned some items to the fitting room attendant, and kept two pairs of jeans with her. She was still wearing the vest she had put on earlier. Defendant then picked up merchandise from the beauty department and put one pair of jeans back on the rack. She subsequently made her way to the cash register, still wearing the vest. Daza testified that, through video surveillance, she observed defendant pay for a pair of jeans and two beauty items. The police officer, who viewed the same video, noted that defendant handed the cashier "a number of small items." Defendant did not take the vest off and hand it to the cashier.

Once defendant's transaction was complete and she started toward the exit doors, Daza stopped observing defendant through the video surveillance and walked to the front of the store. Daza saw defendant remove the vest she had been wearing and place it in her T.J. Maxx bag. Defendant then left the shopping cart with the bags of merchandise in the store and walked out. She returned two minutes later, grabbed the bags from her shopping cart, and left the store. At trial Daza initially testified she confronted defendant and defendant "pushed through [her] and started running towards a parked car she had outside the store." On cross-examination, however, she back peddled and agreed defendant exited first, followed by Daza, and there was never any physical contact between the two. Daza followed defendant out of the store where defendant had a vehicle parked by the front of the store. Daza approached defendant as she was walking out and identified herself as "TJMaxx loss prevention," at which point defendant ran towards the vehicle. The engine of the vehicle was already running. As defendant was running, she dropped a box containing a single piece of jewelry, which Daza

3

recovered. As defendant got into the vehicle, she did not say anything to Daza, though she did look at Daza, at which point Daza asked her to return the vest. Defendant closed the door and drove away. At that time it was raining mildly. After Daza went back into the store, she phoned the Fountain Valley Police Department to report what happened.

On cross-examination Daza acknowledged that she did not know what items the cashier was ringing up when defendant was in line paying for her merchandise. Daza also acknowledged that to scan an item the cashier only needs the ticket. Daza conceded that she prepared a report saying defendant paid for "a couple" pairs of jeans, in contrast to her testimony at trial that defendant paid for only one pair of jeans.

With regard to the receipt for defendant's purchase, Daza testified that she did not have a copy because she gave it to the police. The police officer, however, testified he never received the receipt (and, indeed, never learned the name of or spoke to the cashier). Daza initially acknowledged that she could not say exactly how many items were on the receipt, though she later testified there were three items on it. Daza also acknowledged that the video surveillance system did not have audio so she did not know what instructions defendant may have given to the cashier, nor did Daza mention in her report that she had spoken to the cashier (though at trial she testified that she had).

On redirect, the prosecutor asked the following question: "And you said you reviewed the receipt of the transaction? [¶] A. Yes, ma'am. [¶] Q. Did you see anything on that receipt indicating that she had paid for the [vest]? [¶] [Defense attorney:] I'm going to object. Hearsay. [¶] The Court: It's overruled. That's not hearsay. [¶] The witness: no."

Anthony Kuisley is an organized retail crime investigator for Marmaxx, the parent company of T.J. Maxx (and Marshalls). Kuisley was at the Fountain Valley T.J. Maxx on the day of the alleged theft. Kuisley assisted Daza in investigating the potential theft by defendant. Kuisley was also observing defendant through video surveillance.

4

Kuisley recovered the pair of jeans that defendant had discarded on a rack. Kuisley discovered the jeans had a security device consistent with the device that would have been on the vest, and that it was placed on a section of the jeans that was abnormal (he did not recall clearly at the time of trial, but he thought it was on the inseam, low on the hip). The jeans had their own sensor on as well. The abnormal security device was not fully closed onto the jeans, so it was easy to take off manually. Kuisley continued assisting Daza until defendant drove away, at which point Kuisley took a picture of the vehicle's license plate with his cell phone. Kuisley testified that defendant drove away at an "above normal rate of speed," though he heard no screeching tires. After defendant left, Kuisley was able to retrieve defendant's address from a prior transaction, which he gave to the police. Kuisley does not recall if he ever pulled the receipt from defendant's transaction.

The investigating police officer was given the security sensor recovered from the discarded jeans. The sensor has a warning that if it is tampered with, it would explode with ink, which did not appear to have occurred with the sensor in question. Daza explained that the ink explosion occurs when manual force is used to remove the sensor. Though she noted that the ink explosion does not always occur even when using manual force. Finally, Daza acknowledged that the sensors do not have any identifying information indicating what item they came from, and that the pins on the security devices sometimes fall out because they were installed improperly.

The final witness in the case was Andrew Pearson, a loss prevention supervisor at a Kohl's store, who was called to testify about a prior act under Evidence Code section 1101, subdivision (b). In January 2011 Pearson observed defendant enter Kohl's through a closed circuit television system. She entered with two or three children and already had an empty (or at least nearly empty) Kohl's bag with her. Pearson observed defendant pick out some clothing, approximately six or seven items. She then entered the fitting room area with her cart. She came out approximately 10 minutes later

5

and Pearson observed that defendant's Kohl's bag was noticeably fuller. After leaving the fitting room, defendant discarded a pair of jeans on a nearby clothing display. Pearson's partner then left the observation room and retrieved the jeans defendant had left behind. Pearson went through the pockets of the jeans and found approximately three security sensors. The security sensors had frayed clothing around the pins that go through the clothing; the pins were also bent.

Defendant continued shopping and eventually made her way to the exit without paying for any merchandise. She took her children and left the store, leaving the cart with the Kohl's bag in it near the front entrance. One of the children with defendant then reentered the store and retrieved the Kohl's bag and left the store. Pearson then left the store and saw defendant and the child entering a vehicle. Pearson identified himself as loss prevention, at which point defendant closed the door of her car and drove away.

Prior to trial, the People moved in limine to admit Pearson's testimony as relevant to defendant's intent. The court granted the motion over defendant's objection, noting the incidents shared similarities, including "going into a fitting room, security tag issues, and exiting in the way that it was done." "As to [Evidence Code section] 352, I did a balancing test, and it's not overly prejudicial. It's another theft, but it has many similarities, and intent is a requirement. So I don't think it's more prejudicial than probative. It certainly isn't that old." The court confirmed its ruling on a renewed objection midtrial, after the evidence concerning this case but prior to the introduction of the prior act evidence, stating, "I think it's even more probative, because that case, the prior, has sensor issues, issues about sensors being moved or disturbed in some way, and it's a theft involving some similarities, like I talked about earlier, and I think it's more probative than prejudicial."

6

DISCUSSION

Defendant's first contention is that Daza's testimony that she reviewed the receipt and it did not indicate a vest was purchased was inadmissible hearsay. We agree the testimony was inadmissible.

Defendant's contention implicates two distinct evidentiary issues. The first is whether the receipt itself would be admissible over a hearsay objection. Assuming it is admissible, the second issue is whether Daza's testimony is admissible secondary evidence of the content of the receipt. (Evid. Code, § 1523.)

With regard to the first issue, the People contend the receipt is not hearsay because it was machine generated, and since a machine is not a person, information derived from the machine is not hearsay. In support, the People cite *People v. Hawkins* (2002) 98 Cal.App.4th 1428, where the issue was whether information automatically generated by a computer about when certain files were accessed (metadata) constitutes hearsay. (*Id.* at pp. 1446-1447.) In concluding it is not, the court explained, "'The printout of the results of the computer's internal operations is not hearsay evidence. It does not represent the output of statements placed into the computer by out of court declarants. Nor can we say that this printout itself is a 'statement' constituting hearsay evidence. The underlying rationale of the hearsay rule is that such statements are made without an oath and their truth cannot be tested by cross-examination. [Citations.] Of concern is the possibility that a witness may consciously or unconsciously misrepresent what the declarant told him or that the declarant may consciously or unconsciously misrepresent a fact or occurrence. [Citation.] With a machine, however, there is no possibility of a conscious misrepresentation, and the possibility of inaccurate or misleading data only materializes if the machine is not functioning properly.' [Citations.] 'The role that the hearsay rule plays in limiting the fact finder's consideration to reliable evidence received from witnesses who are under oath and subject to cross-examination

7

has no application to the computer generated record in this case. Instead, the admissibility of the computer tracing system record should be measured by the reliability of the system, itself, relative to its proper functioning and accuracy.'" (*Id.* at p. 1449.)

Courts have generally held, however, that receipts *are* hearsay. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 87 ["'Since invoices, bills, and receipts for repairs are hearsay, they are inadmissible independently to prove that liability for the repairs was incurred, that payment was made, or that the charges were reasonable'"] citing *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 42-43; *People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1312 ["The sales receipt memorialized certain out-of-court statements whose relevance, if any, was grounded in the truth of the matters asserted and, thus, they are hearsay"].) On the other hand, the court in *People v. Nazary* (2010) 191 Cal.App.4th 727 recognized that certain portions of a receipt may be automatically generated by a computer and, therefore, not hearsay. (*Id.* at p. 754 ["The printed portions of the [pay island cashiers'] receipts, including the date, time, and totals, were not statements inputted by a person, but were generated by the [pay island cashiers] machine"].)

The question, therefore, is whether the information from the receipt introduced at trial was information automatically generated by a computer or reflective of human input. And the answer is clear: the computer did not automatically determine which items were to appear on the receipt. That was the result of the cashier's input. Accordingly, that aspect of the receipt was hearsay.

To the extent the People desired to introduce evidence of the receipt to show what items were not purchased, it was necessary to lay a business records foundation pursuant to Evidence Code section 1272, which states: "Evidence of the absence from the records of a business of a record of an asserted act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the nonoccurrence of the act or event, or the nonexistence of the condition, if: [¶] (a) It was the regular course

8

of that business to make records of all such acts, conditions, or events at or near the time of the act, condition, or event and to preserve them; and  [¶]  (b) The sources of information and method and time of preparation of the records of that business were such that the absence of a record of an act, condition, or event is a trustworthy indication that the act or event did not occur or the condition did not exist."  No such foundation was laid at trial.

The People contend defendant forfeited any argument regarding the lack of a business record foundation.  However, the People cite no authority for the proposition that, having objected on hearsay grounds, a defendant must make an additional objection to the lack of a business record foundation, even though the People made no attempt to lay such a foundation.  Ultimately, "The proponent of hearsay evidence bears the burden of showing it falls within a hearsay exception."  (*Gatton v. A.P. Green Services, Inc.* (1998) 64 Cal.App.4th 688, 693.)  Defendant did not forfeit the issue.

The People also contend that because this was a receipt from a retail store, no additional foundation was needed.  However, in *People v. Crabtree*, *supra*, 169 Cal.App.4th at page 1313, the court rejected a "'common knowledge' presumption for store sales receipts" for purposes of laying a business record foundation.  Given the relative ease with which the People could have laid a foundation, we see no reason to adopt such a presumption.

Finally, the People argue that testimony of the absence of a record is not hearsay at all.  The People cite two cases.

The first is *People v. Torres* (1962) 201 Cal.App.2d 290.  *Torres*, however, did not decide whether the absence of a record is hearsay.  It simply decided what inferences can properly be drawn from the absence of a record.  (*Id.* at p. 295.)  Indeed, in that case, the defendant had forfeited any hearsay objection by stipulating to the admissibility of the records at trial.  (*Ibid.*)

9

Second, the People cite *People v. Trombino* (1967) 253 Cal.App.2d 643 (*Trombino*). There, the defendant was accused of depositing a check drawn from a fake account. A bank manager testified that he searched the bank records and found no account under the name of the alleged signer of the check. (*Id.* at p. 645.) The court concluded this was not hearsay, stating, "Testimony that a witness did not find a particular business entry is not hearsay; the witness speaks of his own knowledge when he testifies that he looked for a record and did not find it. The issue is one of materiality. The testimony that a witness did not find a record is meaningless unless (a) there is evidence that such a record would have existed if the transaction involved had taken place; (b) that the witness had looked for the record in the place it would have been had it existed; and (c) that the witness was competent to identify the record had it been where he looked." (*Id.* at p. 646, fn. omitted.)

*Trombino* is distinguishable on the ground that, here, Daza did not search through T.J. Maxx's records and find that there simply was no applicable record. Instead, she looked at a particular record and testified to its content (or lack thereof). If Evidence Code section 1272 does not apply to the situation before us, then it is hard to imagine where it would ever apply. We conclude it does apply and that the People were required to lay a business record foundation. Because we conclude the testimony regarding the receipt was inadmissible under the hearsay rule, we need not reach the issue of whether Daza's testimony was admissible secondary evidence of the receipt.[1]

[1] However, we make two observations. First, as applied to the facts here, Evidence Code section 1523 would permit oral testimony of the content of the receipt only if the original had been lost or destroyed without fraudulent intent (*id.*, subd. (b)) or if the receipt is not in the People's possession and is not reasonably procurable by the People (*id.*, subd. (c)(1)). There was no evidence in the record concerning why T.J. Maxx could not simply print another copy of the receipt from its computer database. Because this foundation was not laid on the record before us, Daza's testimony about the content of the receipt was subject to being excluded. On the other hand, the second observation is that defendant did not object under the secondary evidence rule at trial. Perhaps the People could have laid a foundation had an objection been raised.

10

Although we conclude that testimony about the receipt was inadmissible, the error was harmless. The applicable standard is whether "'after an examination of the entire cause, including the evidence,' [the court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Given the substantial evidence demonstrating defendant's guilt, we find no reasonable probability of a different result in the absence of the error. Defendant took the vest into the changing room along with a pair of jeans, emerged and put the jeans on a rack. In the jeans was a second, tampered security sensor consistent with the sensor that would have been on the vest. Defendant had no satisfactory explanation for the tampered security sensor in the jeans. While defendant paid for certain items, there was no visual indication that she paid for the vest, and immediately after paying for her items, she took the vest off, placed it in the bag, and then went to retrieve her vehicle. While this odd procedure, standing alone, could be explained by the fact that it was raining, her subsequent behavior after being confronted by the loss prevention officer cannot. Not only did defendant make eye contact with the officer and then flee at an above normal rate of speed, but she dropped jewelry in her haste to get away and made no effort to come back for it. These are not the actions of the innocently accused. Moreover, while the prosecutor did mention the testimony about the receipt in closing argument, it was mentioned only briefly, and the prosecutor did not rely heavily on it in the overall context of closing argument. Accordingly, there was no reasonable probability of a different result absent the error.

Defendant's second contention is that Pearson's testimony regarding the prior theft was inadmissible under Evidence Code section 352 because its prejudicial effect outweighed its probative value. Under Evidence Code section 1101, subdivision

---

Defendant's failure to object forfeited the issue for purposes of this appeal.

(a), "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." However, under subdivision (b), "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." The People proffered Pearson's testimony to prove defendant intended to steal the vest.

Defendant concedes Pearson's testimony was, at minimum, admissible under Evidence Code section 1101, subdivision (b), on the issue of intent, but that its probative value was minimal relative to its prejudice. (Evid. Code, § 352.) Defendant contends it was prejudicial because it involved using a child to perpetrate the crime, which is likely to evoke an emotional response, and because its primary impact was to improperly prove defendant has a propensity to commit theft.

"Our conclusion that [Evidence Code] section 1101 does not require exclusion of the evidence of defendant's uncharged misconduct . . . does not end our inquiry. Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' [Citations.] 'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have *substantial* probative value.'" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.) "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) "A trial court's exercise of discretion under [Evidence Code] section 352 will be upheld

12

on appeal unless the court abused its discretion, that is, unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*People v. Thomas* (2012) 53 Cal.4th 771, 806.)

We conclude the court did not abuse its discretion. Intent was undoubtedly a material fact in this case: specific intent to steal was an element of petty theft (CALCRIM No. 1800), and entrance into the store with the intent to commit petty theft was an element of the burglary charge (CALCRIM No. 1700). Further, the prior act evidence was highly probative on the issue of intent. The marked similarities between defendant's prior actions and her actions in the current case leave little doubt that she intended to steal the vest in this case. In particular, both cases involved entering a changing room, removing security sensors, depositing those sensors in a pair of jeans, leaving the jeans on the rack, taking the merchandise to the front of the store, leaving the store to pull her car to the front of the store, reentering the store to retrieve the merchandise, and speeding away when confronted by a loss prevention officer. These similarities leave little doubt about defendant's intent.

We recognize that in cases such as these, the prejudicial effect of prior act evidence outweighs its probative value where "the evidence would be merely cumulative regarding an issue that was not reasonably subject to dispute." (*People v. Ewoldt*, *supra*, 7 Cal.4th 380, 406.) In our view, however, the evidence was not cumulative, and intent was reasonably subject to dispute. The evidence of defendant's intent was entirely circumstantial, and the inferences to be drawn from those circumstances were hotly disputed. Moreover, at the point in the trial when the prior act evidence was admitted, the prosecutor had no way of knowing whether defendant would argue that defendant's failure to pay for the vest was an accident. The prior act evidence would strongly rebut such a defense, and, indeed, may have contributed to the fact that defendant did not ultimately advance an accident defense. Given these circumstances, we cannot conclude

13

the trial court's ruling was arbitrary, capricious, or patently absurd.  Accordingly, the court did not err by admitting the prior act evidence.


DISPOSITION


The judgment is affirmed.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.